# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| JEANNE-MARIE CURTIS | : |
| Plaintiff, | : CIVIL ACTION |
| v. | : NO. 12-cv-4786 |
| UNIONVILLE-CHADDS FORD SCHOOL DISTRICT | : |
| Defendant. | : |

**MEMORANDUM**

YOHN, J.                                                                                      May 1, 2013

      Plaintiff, Jeanne-Marie Curtis, brings this action against defendant, Unionville-Chadds Ford School District (the "School District"), alleging violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634; specifically, age discrimination (count I) and retaliation (count II). Before me is the School District's motion to dismiss Curtis's complaint in its entirety pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.[1] In addition to requesting dismissal of Curtis's age discrimination and retaliation claims, the School District requests that certain damages sought in Curtis's *ad damnum* clause be stricken as a matter of law. For the reasons set forth below, the School District's motion to dismiss will be granted with respect to Curtis's prayer for compensatory damages for pain and

---

[1] The School District requests dismissal of the complaint pursuant to "Rule 12," without specifying the provisions of Rule 12 it invokes. Because it challenges the court's jurisdiction, in addition to a challenge that Curtis has not stated a claim upon which relief can be granted, I read the motion to dismiss to invoke both Rule 12(b)(1) and 12(b)(6).

suffering and emotional distress; the remainder of the motion shall be denied.

I.  **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On March 23, 2011, an unexpected indoor recess forced Curtis—a paraprofessional who has been employed by the School District since March 2004—to locate a classroom to host a group of third grade male students. (Sec. Am. Compl. ¶¶ 16-17.) The following day, Mark Ransford, the school principal (who is in his thirties), approached Curtis with a handful of wires that had been cut from one of the classrooms the day prior. (*Id*. ¶ 19.) Ransford asked Curtis which classroom she had used for the indoor recess, and Curtis responded that she could not recall. (*Id*. ¶ 20.) Ransford then took Curtis to each third-grade classroom and asked if she could identify any of the boys who may have been in the classroom from the previous day's recess. (*Id*. ¶ 21.) It was then that Curtis was able to recall the classroom that she had used for the indoor recess. (*Id*. 22.)

On March 25, 2011, Ransford visited Curtis and expressed his concern that she could not recall where she was or what she was doing the day before their last encounter, along with her repeated statements that she must have been having a "senior moment." (*Id*. ¶ 23.) Ransford also stated that he and Curtis would have a meeting with School District administrators to discuss the incident. Curtis responded that she found Ransford's remarks offensive, and warned him that he needed to be careful about making statements about a person's mental capacity or ability to perform their job. (*Id*. ¶ 25.) When Ransford then asked if she was threatening him, Curtis replied that she was not, but was warning Ransford about the seriousness of making untrue statements. (*Id*. ¶ 26.) Ransford stated that he was only repeating Curtis's comments about having "senior moments." (*Id*. ¶ 27.) At that point, Curtis informed Ransford that she was not

willing to have any future meetings with Ransford without the presence of a third party, to which Ransford replied that they had a "serious problem." (*Id*. ¶¶ 28-29.)

Sometime in the remaining days of March, following the encounter with Ransford, Curtis filed a formal complaint with Sharon Parker, the School District's superintendent, alleging that Ransford harassed her on account of her age. (*Id*. ¶ 30.) On May 23, 2011, approximately two months after the filing of her complaint, Curtis emailed several School District administrators and asked for an update to her complaint's status. (*Id*. ¶ 31.) Sharon Allen-Spann, a human resources supervisor for the School District, replied to Curtis and explained that the complaint was under review and that she hoped to have a resolution within three days. (*Id*. ¶ 32.) Curtis met with School District administrators on May 27, 2011, to discuss her complaint, and on June 8, 2011, she confirmed that all of the written documents associated with her complaint were on file with the School District's human resources department. (*Id*. ¶¶ 33-24.) Parker retired from her position as superintendent at the conclusion of the 2010-2011 school year and was replaced by John Sanville (also in his thirties). (*Id*. ¶¶ 36-37.)

On September 15, 2011, Curtis stopped a group of fifth-grade boys from bullying some fourth-grade children. (*Id*. ¶ 38.) After separating the groups, she reprimanded the fifth-grade boys for their behavior and reported the incident to their teacher. (*Id*. ¶¶ 39-40.) The following day, the same group of fifth graders continued their bullying; again Curtis intervened. (*Id*. ¶ 41.) One student approached Curtis from behind and verbally assaulted her. (*Id*. ¶ 42.) Consequently, Curtis took a picture of that student. (*Id*. ¶ 43.) She then asked those fourth-grade students who felt bothered by the fifth graders to raise their hands, taking a picture of those who obliged. (*Id*. ¶ 44.)

On September 19, 2011, Curtis met with Ransford, the fifth-grade boys, and the school counselor to discuss the incident. (*Id*. ¶ 46.) Following the meeting, Curtis was asked to proceed to the School District's main campus for a meeting with Allen-Spann. (*Id*. ¶ 47.) When Curtis arrived, Allen-Spann informed her that she was being placed on a three-day paid leave while the School District conducted an investigation—requested by Ransford and driven by complaints received from parents—into alleged "abusive" treatment of the fifth grade boys. (*Id*. ¶¶ 48, 50.) Curtis denies that any abusive treatment occurred. (*Id*. ¶ 49.) At the conclusion of the investigation, however, Ransford found Curtis liable for abusive behavior. (*Id*. ¶ 53.) Consequently, she was forced to undergo counseling. (*Id*. ¶ 51.)

Curtis filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on September 23, 2011. (*Id*. ¶ 54.) She alleged that her suspension, the wrongful accusation of abusive treatment, and the mandatory counseling were acts of discrimination and retaliation for her complaint to the School District of unlawful age discrimination.[2] (*Id*. ¶ 52.)

In January 2012, while the EEOC's investigation was pending, Ransford called the same group of fifth grade boys into a meeting with Jennifer Smith, a School District employee in her thirties, who had reprimanded the boys for another incident of bullying. (*Id*. ¶¶ 55-56.) Curtis, a witness to the boys' behavior, was present for the meeting. (*Id*. ¶ 57.) In addition to scolding the boys for their misconduct, Ransford commended Smith for reprimanding the boys and reporting the incident to their teacher. (*Id*. ¶¶ 58-59.) Curtis asserts that Smith was neither disciplined nor

---

[2]She alleges that she was 57 years old at the time she filed the EEOC complaint. (Sec. Am. Compl. ¶ 15.)

4

suspended over the matter, despite handling the situation in a similar manner as Curtis had in September. (*Id*. ¶ 63.)

The EEOC issued a Notice of Right to Sue to Curtis on May 22, 2012. (*Id*. ¶ 12b.) A timely complaint followed. Curtis has since amended her complaint twice. The School District's motion to dismiss is now ripe for disposition.

## II. STANDARD OF REVIEW

When a motion under Rule 12 is "based on more than one ground, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." *Jeffrey Banks, Ltd. v. Jos. A. Bank Clothiers, Inc.,* 619 F. Supp. 998, 1001 n.7 (D. Md.1985) (quoting 5 Wright & Miller, Federal Practice and Procedure § 1350, at 548 (1969)). A motion to dismiss under Rule 12(b)(1) challenges the existence of subject matter jurisdiction, and in response to the motion, the plaintiff bears the burden of persuasion. *See Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1409 (3d Cir.1991).

In deciding a motion to dismiss under Rule 12(b)(6), courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks and citation omitted). The pleading standard of Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice. *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S.

5

544, 555 (2007)). The complaint must contain sufficient factual matter to be plausible on its face. *See id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"; a sheer possibility that a defendant acted unlawfully is not sufficient. *Id.* Therefore, to survive a motion to dismiss, a plaintiff must allege facts sufficient to "nudge[] [his or her] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

## III. DISCUSSION

The School District advances several arguments in its motion to dismiss. First, it argues that the court lacks jurisdiction to hear Curtis's claims because she has not exhausted her administrative remedies, as required under the ADEA. Second, it argues that Curtis has failed to state a claim for relief for discrimination or retaliation under the ADEA. Third, the School District asserts that Curtis seeks damages not available under the ADEA, and therefore, those non-existent remedies must be stricken from the *ad damnum* clause. I will now address those arguments *seriatim*.

### A. Exhaustion of Administrative Remedies

The School District argues that the court lacks jurisdiction over Curtis's claims because she did not exhaust her administrative remedies with the EEOC. Specifically, the School District asserts that paragraphs fifty-five through fifty-nine of the second amended complaint, which discuss the January 2012 incident between Smith, Ransford, and the fifth-grade boys, allege new facts that have not been raised to the EEOC. Consequently, it argues that Curtis's age discrimination claim, or at a minimum the newly alleged facts, have not been exhausted before the proper administrative agency and therefore the court lacks jurisdiction to hear Curtis's claim.

I disagree.

The ADEA states, "No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the [EEOC]." 29 U.S.C. § 626(d)(1). The Third Circuit has stated that the exhaustion of administrative remedies under the ADEA is a prudential, not a jurisdictional, requirement. *See Ruehl v. Viacom, Inc.*, 500 F.3d 375, 384 (3d Cir. 2007) (stating ADEA's timely exhaustion requirement is non-jurisdictional); *Wilson v. MVM, Inc.*, 475 F.3d 166, 175 (3d Cir. 2007) (rejecting distinction between failure to timely exhaust and complete failure to exhaust); *Hammer v. Cardio Med. Prods., Inc.*, 131 F. App'x 829, 831 ("It is well–established, however, that a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to filing suit under . . . the ADEA . . . ." (citing *Courtney v. LaSalle Univ.*, 124 F.3d 499, 505 (3d Cir. 1997)). Accordingly, the School District's argument that Curtis's alleged failure to exhaust serves as a jurisdictional bar to this court fails under Third Circuit precedent.

The School District's argument that the newly alleged facts in paragraphs fifty-five through fifty-nine fall outside the scope of the EEOC's investigation, and therefore should be dismissed from this lawsuit, is also unpersuasive. In defining the scope of a civil action before a district court, the Third Circuit has stated that "the parameters . . . are defined by the scope of the EEOC investigation which can reasonable be expected to grow out of the charge of discrimination." *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398-99 (3d Cir. 1976). The Third Circuit has acknowledged that "permitting suits based on new acts that occur during the pendency of the case which are fairly within the scope of an EEOC complaint or the investigation growing out of that complaint, without requiring the victim to file additional EEOC complaints,"

7

is acceptable. *Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir. 1984). Courts that have found a failure to exhaust have done so in cases where a claim before the court was neither part of the original charge to the EEOC nor part of the EEOC's investigation. *See, e.g., Anton v. Perry*, 82 F.3d 1291, 1295-96 (3d Cir. 1996) (affirming summary judgment against plaintiff for gender discrimination claim because plaintiff never asserted gender discrimination in administrative proceedings and claim was not part of EEOC investigation).

In this case, Curtis submitted her charges of age discrimination and retaliation to the EEOC on September 23, 2011. In her charge of discrimination she specifically mentioned both the incident that occurred on September 19, 2011, which led to her suspension, and the complaint she filed with the School District in March 2011 alleging harassment and discrimination based on age. (Mot. to Dismiss Ex. A.) The EEOC's investigation was pending in January 2012 when the newly alleged incident involving Ransford, Smith, and the fifth-grade boys occurred—an incident of significant resemblance to the situation that led to Curtis's suspension. Thus, I find that the January 2012 incident is a situation that reasonably could have been discovered during the EEOC's investigation of the charge of discrimination, *see Ostapowicz*, 541 F.2d 399, and therefore the School District's motion to dismiss pursuant to Rule 12(b)(1) is denied. Moreover, the incident is not the basis for a new and separate claim by Curtis, but is rather only supporting evidence that would, unless distinguished, support Curtis's claim of age discrimination arising out of the prior events.

    **B.**    **Failure to State a Claim for Relief for Discrimination and Retaliation under the ADEA**

Next, the School District argues that Curtis's complaint should be dismissed because she

fails to plead a prima facie case for age discrimination or retaliation. Reading the complaint in the light most favorable to Curtis, as I am required to do at this stage in the proceedings, I find that she states a prima facie case for both age discrimination and retaliation, and that her allegations support an inference that she may plausibly be entitled to relief with respect to both claims.

To state a prima facie case for age discrimination under the ADEA, a plaintiff must allege that: "(1) [she] is within the protected age group of 40 and over, (2) [she] was qualified for the position in question, (3) [she] was the subject of an adverse employment action, (4) under circumstances giving rise to an inference of discrimination." *Klinman v. JDS Uniphase Corp.*, 439 F. Supp. 2d 401, 405 (E.D. Pa. 2006) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Fasold v. Justice*, 409 F.3d 178, 183-84 (3d Cir. 2005)). In its motion to dismiss, the School District does not dispute that Curtis has met the first three prongs, but argues that she has not pleaded facts to show that non-members of a protected class were treated more favorably, such that one may draw an inference of discrimination. I disagree. Curtis's claim is "circumstances giving rise to an inference of discrimination": the March 2011 events, "senior moment" comments, and subsequent actions of Ransford are enough.

In addition, in her second amended complaint, Curtis alleges that following the January 2012 incident involving Ransford, Smith, and the fifth-grade boys—an incident similar to the one that led to Curtis's suspension in September—Ransford treated Smith favorably after reprimanding the boys and reporting the incident, whereas Curtis was suspended and eventually forced to attend counseling. This evidence supports the claim of discrimination in connection with the March 2011 events. I have stated that the January 2012 incident was within the scope of

9

the EEOC investigation and is, therefore, properly before the court. "While not required to prove the[] elements [of a prima facie case] at the pleadings stage, a plaintiff must plead facts that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" *Angrand v. Paragon Vill.*, No. 09-1118, 2010 WL 1644132, at *3 (D.N.J Apr. 22, 2010) (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) (citation omitted)). I find that the March 2011 incidents including reference to "senior moments," the alleged subsequent actions of Ransford, and the January 2012 incident, when compared to that of September 2011, do raise an inference of discrimination—however slight—that state a plausible claim of relief, and if bolstered by further factual evidence after an opportunity for discovery could entitle Curtis to relief. *See Bruno v. W.B. Saunders Co.,* 882 F.2d 760, 765 (3d Cir. 1989) (acknowledging "the settled rule that more favorable treatment for those not within the protected class will support an inference of age discrimination"). Discovery may ultimately reveal that no such age discrimination occurred, at which point the School District may file a motion for summary judgment. Nevertheless, Curtis should first be afforded the opportunity to develop facts to prove her case.

"To establish a prima facie case of proscribed retaliation under [the ADEA], a plaintiff must show: (1) that [she] engaged in a protected employment activity; (2) that [she] was subject to adverse action by the employer wither subsequent to or contemporaneous with the protected activity; and (3) that there is a causal connection between the protected activity and the adverse action." *Fasold v. Justice*, 409 F.3d 178, 188 (3d Cir. 2005). "A plaintiff may show a causal link by proving '(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action'; '(2) a pattern of antagonism coupled with timing to establish

10

a causal link'; or (3) that causation may be inferred 'from the evidence gleaned from the record as a whole.'" *Mikulski v. Bucks Cnty Cmty. Coll.*, No. 11-557, 2011 WL 1584081, at *4 (E.D. Pa. Apr. 27, 2011) (quoting *Lauren W. ex rel Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)) (internal quotation marks omitted). Here the School District only challenges the third prong of the retaliation claim. Specifically, the School District argues that the complaint "is devoid of any evidence to support causation at all," (Mot. to Dismiss 8), and points to a lack of temporal proximity between the protected employment activity and the adverse action to bolster its argument. I find this argument to be unpersuasive.

"At the motion to dismiss stage, [a] plaintiff need not prove her prima facie case but rather must state a facially plausible claim." *Mikulski*, 2011 WL 1584081, at *4. Curtis has done just that. She alleges that she made a formal complaint through her superiors of age discrimination that was the cause of her subsequent suspension and required counseling. The allegations, taken as true, support a facially plausible claim of retaliation.

The School District points to the Third Circuit case *Urey v. Grove City College* for the proposition that "if at least four months pass after the protected action without employer reprisal, no inference of causation is created." *Urey v. Grove City Coll.*, 94 F. App'x 79, 81 (3d Cir. 2004) (quoting *Woods v. Bensten*, 889 F. Supp. 179, 187 (E.D. Pa. 1995)) (internal quotation marks omitted). Because the adverse employment action occurred nearly six months after Curtis's March 2011 complaint to the School District, it argues that the lack of temporal proximity refutes any inference of causation. First, the Third Circuit is clear that temporal proximity is not the only manner in which a plaintiff may infer causation in a retaliation claim. *See Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000) (acknowledging that

where temporal proximity is missing, courts may look to the entire record, to include the intervening period between the protected activity and adverse action to find evidence of retaliatory animus). And Curtis does not rely on timing alone. Curtis's allegation that Ransford led the investigation that found her liable for abusive behavior, which spawned the counseling requirement, together with the relatively short time between the events, certainly provides a plausible causal link between a protected employment activity and an adverse action. Second, the School District's argument is belied by the fact that although the time between Curtis's complaint and suspension was nearly six months, less than four months passed between the resolution of her complaint and her suspension.

As is the case with Curtis's claim of age discrimination, upon allowance of discovery it may become clear that there is no causal link between Curtis's complaint to the School District and her eventual suspension. At that time, the School District may attempt to resolve this case on summary judgment. Nevertheless, having satisfied the pleading requirements of Rule 8, Curtis's complaint survives the motion to dismiss.

### C. Damages

The School District argues that some of the damages Curtis seeks are not available under the ADEA. Specifically, it challenges Curtis's claims for the following: compensatory damages for pain, suffering, and emotional distress; liquidated damages; and compensation for training, benefits, front salary, bonuses, pension, seniority, and continuing education. The School District requests that unavailable damages be stricken from the complaint. Indeed, plaintiff does allege a litany of damages claims, seemingly taken from a form book, that seem to have no connection with the facts of this case.

To begin, Curtis concedes that compensatory damages for pain, suffering, and emotional distress are not available under the ADEA. (Resp. 9.) *See C.I.R. v. Schleier*, 515 U.S. 323, 326 & n.2 (1995) (stating that circuit courts have unanimously held that ADEA does not permit recovery of compensatory damages for pain and suffering or emotional distress). Accordingly, those damages will be dismissed.

Next, the School District argues that Curtis's claim for liquidated damages must be dismissed because such damages are only available for "willful" violations of the ADEA, *see* 29 U.S.C. § 626(b), and Curtis has failed to plead facts demonstrating willfulness on behalf of the School District. "Willfulness," however, is a condition of mind, and Rule 9 of the Federal Rules of Civil Procedure allows such conditions to be alleged generally. *See* Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."); 5 Wright & Miller, Federal Practice and Procedure § 1301 (2d ed. 1990). In her complaint, Curtis alleges that the School District's conduct was willful, entitling her to liquidated damages. (Sec. Am. Compl. 9.) I find this allegation sufficient to satisfy the pleading standards of Rule 8 and Rule 9(b). Going forward, she now has the burden of proving that such willfulness existed.

Finally, the School District argues that compensation sought for training, benefits, front pay, bonuses, pension, seniority, and continuing education should be dismissed because such remedies are either not available under the ADEA or not supported by facts that show an entitlement to such remedies. "In any action brought [under the ADEA] the court shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes [of the ADEA] . . . ." 29 U.S.C. § 626(b). Courts have recognized that damages similar to those

sought in this case are available because they sound in equity. *See, e.g., Blum v. Witco Chem Corp.*, 829 F.2d 367, 373 (3d Cir. 1987) (finding back pay as equitable relief); *Maxfield v. Sinclair Intern.*, 766 F.2d 788, 795 (3d Cir. 1985) (finding front pay as equitable relief); *Spagnuolo v. Whirlpool Corp.*, 717 F.2d 114, 120 (4th Cir. 1983) (finding reinstatement of ADEA plaintiff with full seniority to be appropriate remedy, though disagreeing with reinstatement on other grounds); *Shea v. Icelandair*, 925 F. Supp. 1014, 1033 (S.D.N.Y. 1996) (stating that employment discrimination plaintiff was entitled to restoration of benefits and pension). Furthermore, Rule 8 only requires Curtis to state a demand for relief sought. *See* Fed. R. Civ. P. 8(a)(3); 5 Wright & Miller, Federal Practice and Procedure § 1255 (2d ed. 1990) (stating *ad damnum* clause not subject to sufficiency of pleading standard of Rule 8(a)(2), and selection of improper remedy not fatal to pleading). She has met that minimal pleading requirement. As stated, many of these claims do not seem applicable, but neither party has addressed them with any specificity. Without meaningful briefing by the parties, the court will not address them individually either. Accordingly, these challenged provisions of her *ad damnum* clause survive the motion to dismiss.

**IV.    CONCLUSION**

For the foregoing reasons, the School District's motion to dismiss will be granted in part and denied in part. An appropriate order follows.